**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **NIHAN CINAR,** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Case No. 13-cv-3230-RWT |
| | * | |
| **BANK OF AMERICA, N.A.,** | * | |
| | * | |
| *Defendant*. | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

The Plaintiff, Nihan Cinar, filed a Complaint seeking class certification, monetary damages, and declaratory relief from Bank of America ("the Bank") because of an alleged breach of contract when the Bank charges a separate "Maryland Attorney Fee" in addition to a "Legal Process Fee" to account holders whose accounts are garnished. ECF No 1. The Bank has moved to dismiss the Complaint. ECF No. 16. This Court will grant the motion because Cinar's claim, while framed as one for breach of contract, actually challenges the adequacy of the Bank's disclosure of such fees. Bank of America has clearly complied with federal law governing national bank disclosure requirements and Cinar cannot avoid preemption by attempting to frame her claim as one for breach of contract. Alternatively, even if the Court were to consider Cinar's Complaint under Maryland contract law, there is no breach and she has thus failed to state a claim upon which relief can be granted.

## Background Facts

Nihan Cinar is a resident of Montgomery County, Maryland. Complaint, ECF No. 1 ("Compl.") ¶ 5. Bank of America, N.A. is a Delaware corporation headquartered in

North Carolina. *Id.* ¶ 6. Cinar has maintained a checking account with the Bank since at least October 31, 2010. *Id.* ¶ 10. When Cinar opened the account, she agreed to the terms listed in the Bank's Deposit Agreement and Disclosures ("Disclosures") and the Personal Schedule of Fees (the "Fee Schedule"), which together make up the standard contract governing Bank of America checking accounts. *Id.* ¶ 19.

The contract provisions at issue in this case relate to fees and/or expenses the Bank deducts from customer accounts when those accounts are garnished. There are two relevant provisions—one in the Fee Schedule and one in the Disclosures. The Fee Schedule, which "lists [the Bank's] accounts and account fees," specifically includes a "Legal Process Fee" of $100, a fee which "applies to each legal order or process that directs us to freeze, attach or withhold funds or other property." *Id.* ¶¶ 19-20; Ex. B. The relevant provisions in the Disclosures state:

> We may charge your account *a fee for each legal process. You agree to pay us for fees and expenses* (including administrative expenses) that *we incur* in responding to any legal process related to your account, such as expenses for research and copying of documents. The *fees and expenses may include attorneys' fees*. We may deduct these fees and expenses from any of your accounts without prior notice to you.

*Id.* Ex. C, at 3 (emphasis added).

At some point before April 19, 2013, Capital One was awarded a judgment against Cinar and served a Writ of Garnishment on the Bank, which attached funds in Cinar's account. *Id.* ¶¶ 11-13. As a result, the Bank withdrew a total of $262.75 from the account. *Id.* ¶¶ 14-16. It released $87.75 to Capitol One per the Writ and deducted, for itself, the $100 Legal Process Fee and a $75 "Maryland Attorney Fee." *Id.* According to the Bank, the Legal Process Fee covers its own internal processing of the garnishment and the Maryland Attorney Fee covers the expenses and costs incurred for outside counsel to represent the Bank in the state garnishment proceedings. Motion to Dismiss, ECF No. 17 ("Mot.") at 1. The same day these fees were

charged to Cinar's account, April 19, 2013, Cinar filed for Chapter 7 protection in the U.S. Bankruptcy Court. *Id.* at 5; McChesney Declaration, ECF No. 17-1, Ex. 3.

Cinar's Complaint disputes imposition of the Maryland Attorney Fee because "[n]owhere in either the Deposit Agreement or the Personal Schedule of Fees does the Bank list a separate attorney's fee to be charged in the event of a garnishment in addition to the $100 Legal Process Fee." Compl. ¶ 24. Cinar claims that by disclosing the $100 Legal Process Fee, the Bank created a binding contract to charge that fee, and only that fee, in responding to legal process. Compl. ¶ 50. The Complaint alleges that the Bank breached its contract with Cinar and other customers when it wrongfully removed "millions of dollars of identically improper attorney's fees [from customer accounts] in at least five States." *Id.* ¶ 25. Allegedly, the Bank processes on average 1,200,000 garnishments annually over 5,252 branches nationwide, 172 of which are in Maryland. Assuming even distribution of garnishment across branches, Cinar claims that the Bank processes 39,299 garnishments in Maryland per year. *Id.* ¶¶ 26-28. The Complaint seeks to certify a class of "all natural persons with personal accounts located in the state of Maryland who had funds in their personal accounts at Bank of America garnished after October 31, 2010, and had a separate attorney's fee, in addition to the $100 Legal Process Fee assessed against them by the Bank as a result of the garnishment." *Id.* ¶ 31.

## Procedural History

Cinar filed her Complaint on October 31, 2013. ECF No. 1. On March 10, 2014, the Bank filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) and a Motion to Strike Plaintiff's Demand for a Jury Trial. ECF Nos. 16, 17, 18. On April 9, 2014, Cinar filed a Response in Opposition and an Amended Response in Opposition to the Motion to Dismiss (ECFs Nos. 21, 23) and a Response in Opposition to the Motion to Strike Jury Demand

(ECF No. 22). On April 30, 2014, the Defendant replied. ECF Nos. 25, 26. On May 29, 2014, this Court held a hearing to consider the motions. ECF No. 27.

### Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." (internal quotation marks and emphasis omitted)). "Thus, '[i]n reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

### Analysis

### *(I)     Federal law preempts Cinar's claim.*

The Bank argues that despite styling her Complaint as a breach of contract action, Cinar is actually challenging the adequacy of its disclosures. According to the Bank, "Cinar's claim rests entirely on the premise that [the Bank] should have disclosed the separate Maryland Attorney Fee in its Schedule." Mot. at 6. Cinar defends framing this as a breach of contract claim

by contending that when the Bank disclosed the $100 Legal Process Fee, it contracted to charge only the disclosed fee and not any additional fees. Cinar argues that Maryland contract law therefore limits the Bank to a Legal Process Fee not to exceed $100. Amended Response in Opposition, ECF No. 23 ("Opp.") at 14. She asserts that once the Bank discloses that sum certain, "it cannot then violate contract law and charge whatever fee it pleases." *Id*. at 2.

The importance of this distinction is that, if Cinar's claim is construed as a challenge to the Bank's disclosures, it is clear that her claim is preempted by federal law governing national bank disclosure requirements. "Pursuant to the Constitution's Supremacy Clause, state laws that conflict with federal law are preempted." *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 322 (4th Cir. 2012). "[U]nder express preemption, Congress expressly declares its intent to preempt state law." *Pinney v. Nokia, Inc.,* 402 F.3d 430, 453 (4th Cir. 2005). "[U]nder conflict preemption, Congress impliedly preempts state law when it actually conflicts with federal law." *Id.* (internal quotation marks omitted).

In implementing the Truth in Savings Act ("TISA"), Congress found that "economic stability would be enhanced, competition between depository institutions would be improved, and the ability of the consumer to make informed decisions regarding deposit accounts, and to verify accounts, would be strengthened if there was uniformity in the disclosure of terms and conditions on which interest is paid and fees are assessed in connection with such accounts." 12 U.S.C. § 4301(a). The Act, therefore, implements provisions to ensure the "clear and uniform disclosure" of interest rates and fees. 12 U.S.C. § 4301(b). TISA specifically requires that:

> Each depository institution shall maintain a schedule of fees, charges, interest rates, and terms and conditions applicable to each class of accounts offered by the depository institution, in accordance with the requirements of this section and regulations which the Bureau [of Consumer Financial Protection] shall prescribe. The Bureau [of Consumer Financial Protection] shall specify, in regulations, which fees, charges, penalties, terms, conditions, and account restrictions must be

included in a schedule required under this subsection. *A depository institution need not include in such schedule any information not specified in such regulation.*

12 U.S.C. § 4303(a) (emphasis added).

TISA's implementing regulations only require the disclosure of certain fees, charges, rates, terms, and conditions that are enumerated in Regulation DD, 12 C.F.R. § 1030.4(b) (2011). The Bureau of Consumer Financial Protection's Official Interpretations of Regulation DD specifically state that institutions do *not* need to disclose "[i]ncidental fees, such as fees associated with state escheat laws, garnishment or attorneys fees, and fees for photocopying." 12 C.F.R. § 1030 Supp. I, § 1030.4(b)(4)(2)(ii) (2011).

TISA's implementing regulations also specify that they are meant to preempt state law with regard to disclosure requirements. Regulation DD holds that "[s]tate law requirements that are inconsistent with the requirements of [TISA] and this part are preempted to the extent of the inconsistency." 12 C.F.R. § 1030.1(d) (2011). This is consistent with other banking regulations including, for example, a Treasury Department regulation on national bank deposit-taking power that states in relevant part that, "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning… [d]isclosure requirements." 12 C.F.R. § 7.4007 (2011).

The Bank is clearly not required by federal law to disclose attorney's fees or expenses. In fact, Cinar does not dispute the majority of the Bank's arguments regarding preemption. Cinar correctly points out that state laws of general application, like contract law, govern national banks to the extent that such laws do not conflict with federal law. *Decohen v. Capital One, N.A.*, 703 F.3d 216, 222-26 (4th Cir. 2012) (discussing Comptroller of the Currency's statement that "federal preemption provisions 'do[ ] not preempt undiscriminating laws of general applicability

that form the legal infrastructure for conducting a banking or other business….'"). In this case, however, Cinar cannot simply frame a disclosure issue as a breach of contract claim to avoid federal law addressing disclosure requirements. Stripped of the contractual veneer with which Cinar envelops her arguments, her claim is simply that the Bank erred in failing to disclose the Maryland Attorney Fee in addition to the Legal Process Fee. If the Court were to find for Cinar, it would essentially require the Bank to disclose such attorney's fees in the future, thereby conflicting with the clear intent of Congress to provide uniform disclosure requirements for national banks.[1]

> *(II)    Cinar has failed to state a claim for breach of contract.*

Even if Cinar's claim were not preempted, it is clear that she has also failed to state a claim for breach of contract. "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977)). Cinar argues that the contract "clearly and unambiguously establishes a transactional limitation of $100 for fees related to responding to a legal process." Opp. at 10. However, there is nothing in the contract that states that the Legal Process Fee is the *only* fee or expense that may be charged as a result of a garnishment and, therefore, Cinar has failed to allege a breach of any contractual obligation.

The relevant provision of the Disclosures states that the account holder agrees "to pay [the Bank] for fees and expenses (including administrative expenses) that [the Bank] incur[s] in

---

[1] This Court is aware that a court in the Eastern District of Arkansas considered a very similar case and found that a claim could be asserted based on state contract law and therefore would not be preempted by federal law. *Clark v. Bank of America, N.A.*, No. 12-cv-00525, slip op. (E.D. Ark., Sept. 10, 2013). This Court does not agree with this one decision of an individual judge that was neither published nor reviewed by an appellate court, the case having been voluntarily dismissed with prejudice.

responding to any legal process related to your account…" and that those fees and expenses may include attorney's fees. Compl., Ex. C at 3. In arguing that the Legal Process Fee listed in the Fee Schedule necessarily encompasses all fees and expenses, Cinar reads a meaning into the contract which is neither clearly stated nor one that may be logically assumed. The Disclosures do not reference the $100 Legal Process Fee, and the Fee Schedule does not state that expenses like attorney's fees are included in the Legal Process Fee.

A "contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Sagner v. Glenagus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964). In addition, "[w]here the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." *Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 941 (Md. 2004). Cinar's argument would render the specific inclusion of "expenses" in the Disclosures superfluous. The Bank's Reply brief correctly points out the different definitions of the terms "fees" and "expenses." Reply at 11. The Bank explains that only certain states, including Maryland, require it to be represented by an attorney in garnishment proceedings, thus necessitating an external expense for these services that in other states can be provided by Bank employees. *Id*. Therefore, the Maryland Attorney Fee is an external expense that the Bank incurs in Maryland that it legitimately passes along to account holders in Maryland. The Legal Process Fee, on the other hand, is a national fee that the Bank includes in its Fee Schedule because it applies in every garnishment proceeding in multiple states in which the Bank operates and is designed to recover its internal costs. Cinar's structural and grammatical arguments are wholly unconvincing. The

contract clearly allows for fees *and* expenses to be deducted from consumer accounts and the

uniform application of a Legal Process Fee does not foreclose the bank from passing on its

external attorney expenses to consumers, especially where those expenses vary by state.[2]

### Conclusion

For these reasons, the Court will, by separate Order, grant Defendant's Motion to Dismiss

and deny as moot Defendant's Motion to Strike Jury Demand.

Date:  July 22, 2014                                    _____
                                                                    /s/
                                                           ROGER W. TITUS
                                                    UNITED STATES DISTRICT JUDGE

---

[2] Bank of America also argues that Cinar lacks standing to assert this claim. Mot. at 29-31. When Cinar filed her bankruptcy petition, she was required to disclose "all legal or equitable interests . . . in property as of the commencement of the case." 11 U.S.C. § 541(a). "Property of the estate includes all of the debtor's interest in any cause of action that has accrued prior to the bankruptcy petition." *Borolo v. Navy Fed. Credit Union*, 458 B.R. 228, 231 (D. Md. 2011)). Therefore, any claim that accrued prior to filing the petition would remain with the bankruptcy estate. "Under Maryland law, a cause of action accrues when: (1) the legally operative facts permitting the filing of a claim come into existence; and (2) the claimants have notice of the nature and cause of their injury." *Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002). On the record before the Court, it is unclear when Cinar received notice of the charge in question and therefore when her cause of action accrued. As the Court does not have sufficient facts before it to decide this issue, it will grant the Motion to Dismiss solely on the other grounds discussed herein.